## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## JONESBORO DIVISION

AMY THOMAS                                                                    PLAINTIFF

V.                                    CASE NO. 3:16-CV-00030 BD

CAROLYN W. COLVIN, Acting Commissioner,
Social Security Administration                                               DEFENDANT

## ORDER

### I.  Introduction:

Plaintiff, Amy Thomas, applied for supplemental security income ("SSI") benefits

on January 24, 2013, alleging a disability onset date of September 1, 1996.[1]  (Tr. at 42)

Ms. Thomas previously received SSI benefits from 1997 to 2008, the year she got

married, at which time she lost her benefits because she had too much income. (Tr. at 61,

251)  After conducting a hearing in this case, the Administrative Law Judge ("ALJ")

denied her application. (Tr. at 50)  The Appeals Council denied her request for review.

(Tr. at 1)  The ALJ's decision now stands as the final decision of the Commissioner, and

Ms. Thomas has requested judicial review.

### II.  The Commissioner's Decision:

The ALJ found that Ms. Thomas had not engaged in substantial gainful activity

since the alleged onset date of January 24, 2013.  (Tr. at 44)  At Step Two, the ALJ found

that Ms. Thomas has the following severe impairments: arthritis in the knees, hips, and

---

[1] Ms. Thomas's attorney amended the alleged onset date to January 24, 2013, with
Ms. Thomas's consent. (Tr. at 60)

back; obesity; borderline intellectual functioning; affective disorder; major depressive

disorder; asthma; and anxiety disorder.  *Id.*

After finding that Ms. Thomas's impairments did not meet or equal a listed

impairment (Tr. at 44), the ALJ determined that Ms. Thomas had the residual functional

capacity ("RFC") to perform sedentary work except that: she could stand for 2 hours in an

8-hour day; could not perform work that requires climbing ladders, ropes and scaffolds;

could not perform work that requires crouching, crawling, or kneeling; could not perform

work that requires more than the occasional performance of each remaining postural

function; could not perform work with exposure to unprotected heights; work must allow

access to the work area with a cane if necessary; she was limited to no more than frequent

handling and fingering duties; she could not tolerate more than occasional changes to the

workplace setting or exposure to concentrated fumes, odors, or gases; she was limited to

work where interpersonal contact is incidental to the work performed; the complexity of

1-to-2 step tasks is learned and performed by rote with few variables and little judgment;

the supervision required would be simple, direct, and concrete; and the work must be

limited to SVP 1 or 2 jobs that can be learned within 30 days.[2]  (Tr. at 45-46)

The ALJ found that Ms. Thomas had no past relevant work.  (Tr. at 49)   At Step

Five, the ALJ relied on the testimony of a Vocational Expert ("VE") to find that, based on

---

[2] The *Dictionary of Occupational Titles* ("DOT") assigns each occupation a number that reflects the job's specific vocational preparation (SVP) time, *i.e.*, how long it generally takes to learn the job.  *Fines v. Apfel*, 149 F.3d 893, 895 (8th Cir. 1998); see *Dictionary of Occupational Titles*, App. C, pt. II., U.S. Dept. of Labor (4th ed. 1991).

2

Ms. Thomas's age, education, work experience and RFC, jobs existed in significant

numbers in the national economy that she could perform at the sedentary level,

specifically, machine tending and new accounts clerk.  (Tr. at 50)  Based on that Step

Five determination, the ALJ found that Ms. Thomas was not disabled.  *Id.*

## III.  Discussion:

A.  Standard of Review

The Court's role is to determine whether the Commissioner's findings are

supported by substantial evidence.  *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000).

"Substantial evidence" in this context means less than a preponderance but more than a

scintilla.  *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009).  In other words, it is

"enough that a reasonable mind would find it adequate to support the ALJ's decision."

*Id.* (citation omitted).  The Court must consider not only evidence that supports the

Commissioner's decision, but also evidence that supports a contrary outcome.  The Court

cannot reverse the decision, however, "merely because substantial evidence exists for the

opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (quoting *Johnson*

*v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)).

B.  Ms. Thomas's Argument on Appeal

Ms. Thomas argues that substantial evidence does not support the ALJ's decision

to deny benefits because the ALJ did not address whether Ms. Thomas met listing 12.05C

with respect to her allegation of borderline intellectual functioning (Adult Listing of

Impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1. § 12.05); because the ALJ failed to

give proper weight to the opinions of Dr. Ronald Hollis, M.D.; and because the VE was not responsive to the ALJ's hypothetical.[3]

At the time of the hearing, Ms. Thomas was 36 years old, 5'5" tall, and over 400 pounds, with a Body Mass Index ("BMI") of 71, which is morbidly obese. (Tr. at 13, 47) She alleged she was "mentally retarded" and was in special resource classes in high school. (Tr. at 63-70, 258) She graduated high school, however, and had a driver's license. (Tr. at 63-70). Ms. Thomas submitted no records of special resource classes or school accommodation. No records prior to 2011, when she was 33 years old, are in evidence.

Ms. Thomas could read and write and do basic math functions, including making change, paying bills, and using a checkbook. *Id.* She stated that she did not drive much because of anxiety, which was exacerbated when she left the house or interacted with others. (Tr. at 63-65, 70) She lived alone with her young son and cared for him two weeks a month. (Tr. at 67-68) She could do some chores, cook and shop, but also needed some help from her father. (Tr. at 69) She sat in a chair to do chores and used a scooter at the grocery store. *Id.* She liked to read and sing karaoke with her family at a bar once every two weeks. (Tr. at 71)

_____

[3] Ms. Thomas specifically argues that the reasoning levels of the jobs the VE provided are beyond the ALJ's assigned RFC, and the ALJ did not resolve this conflict between the VE's testimony and the DOT. The DOT provides generic job descriptions that offer the approximate maximum requirements for over 13,000 positions. *Wheeler v. Apfel*, 224 F.3d 891, 897 (8th Cir. 2000).

At the request of the state, Dr. Suzanne Gibbard, Ph.D., performed a mental status exam, intellectual assessment, and evaluation of adaptive functioning on January 6, 2011. (Tr. at 251-255)  Ms. Thomas reported that she bathed and dressed herself, drove, handled her own finances, participated in social activities, and was not taking medications at the time of the examination.  (Tr. at 255)

Dr. Gibbard performed a WAIS-III IQ test on Ms. Thomas.  The test revealed a verbal IQ of 73, a performance IQ of 72, and a Full Scale IQ of 70.  (Tr. at 254).  Dr. Gibbard diagnosed depressive disorder, anxiety disorder, and borderline intellectual functioning.  *Id.*  Dr. Gibbard found the results to be a valid and reliable sample of Ms. Thomas's level of intellectual functioning.  *Id.*  Dr. Gibbard concluded that work tasks would need to be relatively simple and repetitive and that Ms. Thomas would have some problems with sustaining concentration; but no other problems in adaptive functioning were reported.  (Tr. at 55)

On March 9, 2011, state agency physician Dr. Ralph Joseph, M.D., conducted a physical examination of Ms. Thomas.  (Tr. 256-62)  She complained of asthma, joint pains, and stated she was "mentally retarded."  (Tr. at 258)  Dr. Joseph found her range of motion to be normal.  (Tr. at 260)  He diagnosed severe obesity, marked depression, anxiety, slow learner, and general arthralgia.  (Tr. at 362)

Ms. Thomas's treating physician, Dr. Ronald Hollis, M.D., reportedly treated her from 2005 through 2015, but she provided no records from him prior to 2011.  (Docket entry #12 at 5)  At various visits from 2011 to 2015, Dr. Hollis treated Ms. Thomas for

hypertension, morbid obesity, osteoarthritis, depression and anxiety.[4]  (Tr. 36-38, 264,

265, 271-275, 291-295, 315-317 319-324, 345)  Over that time, he prescribed Mobic,

hydrocodone, and Celexa for pain; Xanax for anxiety; Prozac for depression; and Ambien

for sleep.  *Id.*  Ms. Thomas testified that the medicines helped a little and had no side

effects.  (Tr. at 66-67)

Ms. Thomas reported that she underwent a nerve conduction study on her hands.[5]

(Tr. at 61-62)  She also said that Dr. Hollis recommended surgery for carpal tunnel

syndrome but she elected not to have the surgery because her insurance ran out.  (Tr. at

66)  There is no record that Ms. Thomas sought low- or no-cost treatment.  See *Riggins v.

Apfel*, 177 F.3d 689, 693 (8th Cir. 1999) (absent evidence claimant was denied low-cost

or free medical care, claimant's argument he could not afford medical care was

appropriately discounted).  Ms. Thomas also testified that her doctor told her she should

wear braces on her arms and knees, but she chose not to follow that advice.  (Tr. at 67)

Ms. Thomas did not attempt to participate in physical therapy or pursue any orthopedic or

pain management care.  Overall, she did not follow her doctor's recommendations and

pursued only conservative treatment.

Dr. Hollis completed two residual functional capacity questionnaires.  The first,

completed on March 5, 2013, indicated severe functional physical limitations due to pain

---

[4] Dr. Hollis did not diagnose borderline intellectual functioning.

[5] Ms. Thomas's attorney reported at the hearing that he would obtain evidence of a nerve conduction study and submit records to the ALJ, but he did not.

and fatigue.  (Tr. 271-272).  He completed the second report on March 11, 2014.  (Tr. at

315-317).  His conclusion in both reports was that Ms. Thomas could not complete an 8-

hour work day 5 days a week due to physical limitations.  (Tr. at 271-272)  The second

report showed nearly incapacitating physical limitations.  The important differences

between the first and second reports, discussed more fully below, are as follows:

March 5, 2013 report: 1) She could sit for 60 minutes at a time for a total of 4

hours in a normal workday; 2) she could stand/walk for 5 minutes at a time; 3) she would

need unscheduled breaks lasting about 30 minutes; 4) she could use her fingers for gross

manipulation 50% of the workday and her fingers for fine manipulation 100% of the

workday; and 5) she could use her arms for reaching 15% of the workday.  (Tr. at 271-

272)

March 11, 2014 report: 1) She could sit for 10 minutes at a time for a total of 3

hours during the workday; 2) she could not stand/walk for any period of time; 3) she

would need unscheduled breaks lasting about 15-20 minutes; 4) she could handle and

finger 20% of the workday; and 5) she could not engage in any reaching during the

workday.  (Tr. at 315-317)

The mental capacity portions of Dr. Hollis's two reports indicated marked

limitations in keeping a schedule and regular attendance at work, and moderate

limitations in her ability to complete a normal workweek at a consistent pace without

interruptions from psychologically based symptoms.  (Tr. at 273-275).  Any other

limitations were mild or less than mild.  He did not conduct any adaptive or cognitive testing.

On April 1, 2013, Ms. Thomas underwent a state-agency physical examination by Dr. Joseph Patterson, M.D.  He found mild limitations on the range of motion in her shoulders, elbows, hips, knees, and lumbar and cervical spine.  (Tr. 281-282)  Straight-leg raise was negative and she had no muscle spasm, joint deformities, instability, muscle weakness, muscle atrophy, or sensory abnormalities.  *Id*.  She had an antalgic gait and could not tandem walk, which could be attributed to her morbid obesity.  *Id*.  Dr. Patterson opined that Ms. Thomas had moderate limitations in bending, lifting, and carrying, and severe limitations in crouching and kneeling.  (Tr. at 283)

Ms. Thomas saw Dr. Anita Gail Wells, Ph.D., a licensed psychologist, at the request of the state on July 10, 2013.  (Tr. at 296)  Ms. Thomas reported depression, loss of energy, irritability, and sleep loss.  *Id.*   She said she had difficulty reading, was in special resource classes in school, and was held back one grade.  (Tr. 297)  She reported sexual abuse as a child.  (Tr. at 297)  Ms. Thomas's mental status exam was normal.  (Tr. at 299)  Dr. Wells diagnosed dysthymic disorder, social anxiety disorder, history of alcohol, anxiolytic, and opioid dependence, and borderline intellectual functioning.  (Tr. at 301)  Dr. Wells found that Ms. Thomas had no difficulty with communication, no evidence of inability to cope with typical mental/cognitive demands of work (she noted any limitations appeared to be due to emotional and not cognitive factors), and good attention and concentration.  (Tr. at 302)   Ms. Thomas had problems with persistence,

but appeared able to complete tasks in an acceptable time frame, notwithstanding her "morbid obes[ity] and slow gait." *Id.*

Ms. Thomas began psychiatric treatment at Life Strategies Counseling, Inc. on February 21, 2014. (Tr. at 306) She saw Robert VanScoy, M.D., a psychiatrist, and Lorna MacDonald, a licensed social worker, five times at the clinic in 2014. (Tr. 306-313; 325-331) There are no other mental health treatment records.[6] Dr. VanScoy diagnosed major depressive disorder and PTSD. (Tr. at 308) Ms. MacDonald indicated that Ms. Thomas had a few moderate mental adaptive functioning limitations and displayed depression and anxiety symptoms that *might* affect social interactions and *might* interrupt daily functioning. (Tr. at 311-312)

Ms. Thomas's hearing before the ALJ took place on June 16, 2014; and her attorney submitted a handful of records after the hearing from Dr. Hollis and Life Strategies Counseling, Inc. Dr. Hollis noted increased joint pain. (Tr. at 38) After Ms. Thomas stated that her medications were helping some, he increased her hydrocodone. (Tr. at 36-38) Her diagnoses were otherwise unchanged. (Tr. at 36-38, 329-344)

Taking Ms. Thomas's arguments in turn, it is clear to the Court that substantial evidence supports the ALJ's decision.

Ms. Thomas first argues that she met listing 12.05C. The listings define impairments that would prevent an adult, regardless of his age, education, or work

---

[6]The Court notes that Ms. Thomas did not pursue any psychiatric treatment until after her application date.

experience, from performing any gainful activity, not just "substantial gainful activity."

In other words, if an adult is not actually working and his or her impairment matches or is

equivalent to a listed impairment, he or she is presumed unable to work and is awarded

benefits without a determination as to whether he or she actually could perform prior

work or other work. *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990).

In order to meet the requirements of Listing 12.05C, Ms. Thomas would have to

show significantly sub-average general intellectual functioning with deficits in adaptive

functioning initially manifested prior to age 22; a valid verbal, performance, or full-scale

IQ of 60 through 70; and a physical or other impairment imposing an additional and

significant work-related limitation of function. 20 C.F.R. Pt. 404, Subpt. P, App. 1.

§ 12.05. In order "to meet a listing, an impairment must meet all of the listing's specified

criteria." *Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010).

Ms. Thomas argues that the ALJ "never discussed whether Ms. Thomas was

disabled under listing 12.05C, despite evidence showing that [she] has a valid IQ score in

the listing range, manifestation of deficits in adaptive functioning prior to age 22, and an

additional significant impairment." (#12 at 18). Ms. Thomas correctly points out that the

ALJ's written opinion addressed listings 12.04 and 12.06, but not 12.05C.

At Step Three, the burden rests squarely on Ms. Thomas to prove that she met a

listing. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). An ALJ's failure to

elaborate on his finding that a claimant's impairments do not equal a listed impairment

does not require reversal if the record supports the ALJ's overall conclusion. *Karlix v.*

*Barnhart*, 457 F.3d 742, 746 (8th Cir. 2006).  A "deficiency in opinion writing is not a

sufficient reason for setting aside an administrative finding where the deficiency had no

practical effect on the outcome of the case."  *Senne v. Apfel*, 198 F.3d 1065, 1067 (8th

Cir. 1999);  *Pepper ex rel. Gardner v. Barnhart,* 342 F.3d 853, 855 (8th Cir. 2003)

(failure to address a specific listing is not reversible error if the record supports the

overall conclusion).  The issue is whether the record supports the ALJ's conclusion,

regardless of whether he discussed the relevant listing.

The ALJ's failure to address listing 12.05C was not error, and even if it were

construed as error, it was harmless.  The record includes two state-agency mental

consultative examinations ("CE").  The first was conducted by Susan Daughtery, Ph.D.,

on March 11, 2013.  (Tr. at 91-93)  Dr. Daughtery used the required Psychiatric Review

Technique ("PRT") in her CE and determined that Ms. Thomas did not meet listing

12.05.[7]  (Tr. at 92)  Kay Cogbill, M.D., performed another mental CE on Ms. Thomas on

June 22, 2013.  (Tr. at 107-109)  After conducting her own PRT, Dr. Cogbill concurred

with Dr. Daughtery that Ms. Thomas did not meet listing 12.05.  (Tr. at 108)

The PRT reviews by the psychologist and the medical doctor sufficed in this case

as an analysis of whether Ms. Thomas met listing 12.05.  The standardized PRT form is

now used only at the initial and reconsideration levels; at the ALJ hearing and Appeals

---

[7] The PRT technique involves determination of whether there is a mental
impairment followed by a rating of the degree of functional limitation resulting from the
mental impairment.  *Nicola v. Astrue*, 480 F.3d 885, 887 (8th Cir. 2007).

Council levels, documentation of the application of the PRT is in the decision itself, rather than on a separate form.  20 C.F.R. §§ 404.1520a(e), 41.920a(e) (2007).  If a psychological examiner (psychologist or medical doctor) completed a form before the hearing and the ALJ discussed the technique within the decision, the ALJ has met the requirement for assessment of mental impairments.  Moreover, even if an ALJ fails altogether to use the technique, it may still constitute harmless error.  *Cuthrell v. Astrue*, 702 F.3d 1114, 1117-8 (8th Cir. 2013).

Although the administrative law judge is authorized under the regulations to complete the PRT himself, see 20 C.F.R. § 404.1520a(d)(1)(I), § 416.920a(d)(1)(I), the statute declares that "in any case where there is evidence which indicates the existence of a mental impairment," an administrative law judge may not make an initial determination that the claimant is not disabled unless the administrative law judge "has made every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment."  42 U.S.C. § 421(h); see also, *Andrade v. Secretary of Health and Human Services*, 985 F.2d 1045, 1049 (10th Cir. 1993) (reversing because the administrative law judge did not ask a psychiatrist or psychologist to complete the PRT); *Montgomery v. Shalala* , 30 F.3d 98, 100-101 (8th Cir 1994).  Here, there is no evidence of a listing-level mental impairment, and two providers conducted PRTs.

Although failure to complete the PRT may itself be reversible error, the Eighth Circuit has left the door open to harmless-error analysis.  *Montgomery*, 30 F.3d at 100.

The Court has found harmless error where there is no credible evidence of a severe mental impairment. *Nielson v. Barnhart*, 88 F. Appx. 145, 147 (8th Cir. 2004)(no evidence of mental impairment, and ALJ made a finding that any alleged depression was not severe).

The weight of the evidence, including the two PRT analyses, supports the ALJ's conclusion that Ms. Thomas did not meet any listing. Several providers said Ms Thomas had mild or no cognitive impairments. Dr. Wells said that Ms. Thomas's limitations in workday requirements were due to emotional, not cognitive, difficulties. (Tr. at 302) Ms. Thomas could read and write, drive a car, do simple math, balance a checkbook, pay bills, care for her young son, and even sing karaoke at a bar twice a month. (Tr. at 64-70) Such daily activities undermine her claims of disability. See *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995); *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

Ms. Thomas argues that she evidenced borderline intellectual functioning with onset before age 22, which is a requirement of listing 12.05C. She argues that her WAIS-III IQ score of 70 meets one prong of listing 12.05C. The record does not reflect an IQ test before age 22, and Ms. Thomas stated on her application that she "was not disabled prior to age 22." (Tr. at 183) The Commissioner need not rely exclusively on IQ scores, and the Commissioner may disregard test scores that are inconsistent with an applicant's demonstrated activities and abilities as reflected in the record as a whole. *Muncy v. Apfel*, 247 F.3d 728, 733 (8th Cir. 2001); *Clark v. Apfel*, 141 F.3d 1253, 1255 (8th Cir. 1998).

Notably, Dr. Hollis, Ms. Thomas's treating doctor, never diagnosed her with borderline intellectual functioning.

Ms. Thomas repeatedly reported that she was in special resource classes in school, failed a grade, and was "mentally retarded."  With no evidence from Ms. Thomas's life before age 33, the Court will not rely upon Ms. Thomas's self-serving statements to find that she met listing 12.05C.  Ms. Thomas did not provided any evidence of onset of intellectual disability before age 22, which criteria must be met to establish she met listing 12.05.

Because two medical examiners found, by using the required PRT, that Ms. Thomas did not meet listing 12.05, and because the record as a whole does not show that she met that listing, the ALJ reached the correct result on listings and committed no error. Assuming, for sake of argument, that the ALJ had erred by not discussing listing 12.05C, the error was harmless and had no practical or prejudical effect on the outcome.

Ms. Thomas's second argument is that the ALJ wrongly discredited Dr. Hollis, her treating doctor.  First, there are only 30 pages of records from Dr. Hollis in the 346-page record.  By contrast, there are opinions from eight health professionals offering consistent evidence of mild to moderate limitations in Ms. Thomas's physical and mental functions.[8]

Dr. Hollis's RFC reports indicated incapacitating disability, and the Court observes that from March 5, 2013 (the date of Dr. Hollis's first report) to March 11, 2014 (the date

---

[8] Those opinions are discussed above.

14

of Dr. Hollis's second report), Dr. Hollis assigned significantly more limitations on several functional areas.  (supra at 6-7; Tr. at 271-272 and 315-317)  Without more clinical objective testing over the course of Ms. Thomas's *alleged* long-time treatment by Dr. Hollis, his opinions are unsupported, internally inconsistent, and inconsistent with the overwhelming medical evidence in the record as a whole.

Here, the ALJ considered the entire record (including Dr. Hollis's functional questionnaires) to arrive at Ms. Thomas's RFC, taking into account her conservative treatment, positive response to medications, failure to follow the recommendations of her doctors (not wearing arm and knee braces), daily activities, complaints of pain, and the total functional limitations assigned by all providers.  *Polaski v. Heckler*, 751 F.2d 943, 948 (8th Cir. 1984).  The ALJ was correct in giving Dr. Hollis's opinions limited weight in the face of considerable medical evidence to the contrary.  The ALJ's consideration of Dr. Hollis's opinions was appropriate and supported by substantial evidence in the record as a whole.

Ms. Thomas's final argument suggests that the jobs described by the VE at the hearing at Step Five exceed the abilities of Ms. Thomas, resulting in a conflict between the DOT and the VE's testimony.  Ms. Thomas contends that the ALJ failed in his duty to resolve the conflict.[9]

---

[9] Ms. Thomas does not argue that the RFC failed to include all of her limitations.

The issue presented is narrow:  Do the unskilled jobs identified by the VE, *i.e.*, machine tender (DOT 589.685-062) and new accounts clerk (DOT 205.367-014), exceed an RFC limited to jobs requiring only "simple 1 to 2 step tasks?"[10]  Granted, Ms. Thomas's RFC included a number of additional limitations, as discussed above, but the case turns on the phrase, "simple 1 to 2 step tasks."

As an initial matter, DOT definitions are "simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range." *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010).  As the *Moore* Court noted, "the DOT itself cautions that its descriptions may not coincide in every respect with the content of jobs as performed in particular establishments or at certain localities."  *Id.*, quoting *Wheeler v. Apfel*, 224 F.3d 891, 897 (8th Cir. 2000).  Not all jobs in every category "have requirements identical to or as rigorous as those listed in the DOT."  *Id.*

Nevertheless, before relying on VE evidence to support a determination that a claimant is not disabled, the ALJ has an affirmative responsibility to ask about "any possible conflict" between VE testimony and the DOT, and to obtain an explanation for any such conflict.  *Renfrow v. Colvin*, 496 F.3d 918, 920-21 (8th Cir. 2007); see  Social Security Ruling 00-4p, 2000 WL 1898704 (Dec. 4, 2000).  Here, the record reflects that the ALJ did inquire about any possible conflict:

---

[10] The machine tender job is performed at the light exertional level, and the RFC limited Ms. Thomas to sedentary work.  Any error was harmless because the VE identified 40,000 new accounts clerk positions in the national economy that a person with Ms. Thomas's RFC, age, education and vocational profile could perform.  (Tr. at 83)

**ALJ**: Mr. Turner (VE) is your testimony today in Ms. Thomas's case consistent with the Dictionary of Occupational Titles, where applicable, to the best of your belief?

**VE**: Yes, sir, it is.

(Tr. at 84)  The ALJ complied with his duty, pursuant to the regulations, to inquire whether the VE's testimony conflicted with the DOT.  Upon the VE stating that no such conflict existed, the ALJ properly could rely on the VE's testimony.  See *Marley v. Comm'r. of Soc. Sec.*, 2015 U.S. Dist. LEXIS 23419, at *10 (M.D. Fla. Feb. 26, 2015). The more probing question raised by Ms. Thomas is whether a conflict existed between the VE testimony and the DOT.

The new accounts clerk position, DOT 205.367-014, SVP 2,  is an unskilled job that requires level-three reasoning.  Level-three reasoning defined by the DOT requires an ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and to "[d]eal with problems involving several concrete variables in or from standardized situations."  *DOT*, Appx. C, pt. III, (Components of the Definition Trailer).  Ms. Thomas argues that this level of reasoning requires cognitive abilities beyond that which she could perform; that is, beyond the ALJ's limitation to "simple 1 to 2 step tasks."

As opposed to level-three reasoning, level-one reasoning requires that a person "apply commonsense understanding to carry out *simple one- or two-step instructions*, and deal with standardized situations with occasional or no variables in or from these situations encountered on the job."  *Id.* (emphasis supplied).  Ms. Thomas infers that,

because only the DOT level-one reasoning definition contains the phrase "simple 1 to 2 step [tasks]," an RFC with that specific limitation precludes all but level-one reasoning jobs.

The issue has not been resolved in the Eighth Circuit.  Neither the Court of Appeals nor any district court in this circuit has specifically addressed an RFC limited to "simple 1 to 2 step tasks" as it relates to potential conflicts with VE testimony.  Law from this circuit discusses "simple, concrete instructions" and "simple repetitive tasks," but not "simple 1 to 2 step tasks."  Ms. Thomas points to cases from this circuit in support of her position, but the cases she relies upon are distinguishable.  (#12 at 27-28).

*Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir. 1997) elaborates on the different reasoning levels.  The ALJ in *Lucy*, however, did not include "simple 1 to 2 step tasks" in the RFC, but rather specified "simple instructions."  And the ALJ did not question the VE at Step Five, so the case was reversed and remanded.  In *Lucy*, the Court of Appeals did not reach the issue of whether an RFC with "simple 1 to 2 step tasks" limits a person to level-one reasoning jobs.

Ms. Thomas also cites *Clay v. Barnhart*, 417 F.3d 922, 930 (8th Cir. 2005), but the claimant in that case had lower IQ scores than Ms. Thomas's, a diagnosis of borderline intellectual functioning, and was characterized as a clear malingerer.  At Step Five, the VE identified available jobs, including cashier, which required level-three reasoning.  *Id*. at 31.  In *Clay*, the court noted that work with "simple, concrete instructions" is "arguably inconsistent with level three functioning"; but it did not decide the issue because the VE

18

had identified other jobs the claimant could perform given her limitations.  *Id*.  Again, the phrase "simple 1 to 2 step tasks" was not part of Clay's RFC.

In *Swope v. Barnhart*, 436 F.3d 1023 (8th Cir. 2006), the claimant had IQ scores in the 80s and had been diagnosed with borderline intellectual functioning, like Ms. Thomas, but in *Swope*, the ALJ included no intellectual limitations in the hypothetical he posed to the VE.  While the Court doubted that Swope could perform a job with level three reasoning given his mental limitations, it decided that the VE was in the best position to answer that question.  *Id*. at 1026.  The case was remanded with instructions for the ALJ to re-call a VE.  Again, the Court did not make a decision on the key phrase at issue here: "simple 1- to 2-step tasks."

In *Renfrow v. Colvin*, supra, 496 F.3d at 920-21, the hypothetical posed to the VE precluded "complex, technical work," but the ALJ did not inquire about any conflict with the DOT and the VE testimony.  The Court held that the ALJ had erred in failing to inquire whether there was a conflict, but also found that the error was harmless because the level-three reasoning jobs suggested by the VE were "unskilled and [did] not appear to be 'complex,'" so there was no conflict to resolve.  *Id*. at 921.  Again, in *Renfrow*, the Court did not discuss "simple 1- to 2-step tasks."

The Eighth Circuit has held that a VE's opinion "that a person limited to 'simple, concrete instructions' can work as a cashier is not inconsistent with the DOT description of cashier as requiring level three reasoning."  *Hillier v. Social Sec. Admin*., 486 F.3d 359, 366-67 (8th Cir. 2007).  Ms. Thomas argues that, because Hillier could perform past

work, that case is distinguishable.  (#12 at 28)  The past work finding in *Hillier* does not

dilute the strength of the holding in *Hillier*.  Ms. Thomas argues that Hillier's mental

health was stable while her own was deteriorating, but as noted, Ms. Thomas's daily

activities contradict her assertion that her mental health was deteriorating.

Still, the Eighth Circuit has not reached the precise issue of how limiting "simple

1- to 2-step tasks" are.  Courts from other jurisdictions, however, give some guidance.  In

*Marley v. Comm'r.*, *supra* at *9-13, the ALJ used the phrase "simple 1 to 2 step tasks" in

the hypothetical posed to the VE; and the VE testified that there were level two and level

three reasoning jobs that Marley could perform.  *Id*. at *10-11.  The Court noted that an

ALJ must resolve any inconsistencies between VE testimony and the DOT, but held that

the ALJ had met that requirement by asking about any potential conflict, as the ALJ also

did in this case.  (Tr. at 84)

The Court in *Marley* stated that "simple work" is not necessarily in conflict with a

DOT reasoning level of three, but that an ALJ is "under no obligation to inquire further,

or to investigate potential conflicts which were not raised at the hearing."  *Marley* at *10-

11.  In this case, Ms. Thomas's attorney replied that he had no questions after the VE

examination, so he essentially waived the argument made herein that the ALJ failed in his

duty.  (Tr. at 85)

On the other hand, various district courts in the Ninth Circuit have held that, when

a claimant is limited to "simple 1 to 2 step tasks," any job beyond level one reasoning

exceeds the claimant's functional abilities:

The limitation to "1-2 step instructions" in Plaintiff's RFC, however, is distinct from the more general limitation to "simple," "routine," or "repetitive" tasks. There is no controlling authority on whether this more specific language is consistent with Reasoning Level 2, and courts have reached inconsistent conclusions. Some courts have found this to be similar to the "simple, repetitive" limitation and thus consistent with Reasoning Level 2. See, e.g., *Murray v. Colvin*, 2014 U.S. Dist. LEXIS 50586, 2014 WL 1396408, at *10 (N.D. Cal. Apr. 10, 2014); *Eckard v. Astrue*, 2012 U.S. Dist. LEXIS 26347, 2012 WL 669895, at *7-8 (E.D. Cal. Feb. 29, 2012).  The weight of authority, however, finds that the addition of the specific wording relating to "one- or two-step instructions" is more restrictive and correlates precisely with the phrasing used in the DOT's definition of Reasoning Level 1, thereby rendering an RFC using this specific language compatible only with Reasoning Level 1 jobs. See *Chase v. Colvin*, 2013 U.S. Dist. LEXIS 145813, 2013 WL 5567082, at *4-5 (D. Or. Oct. 9, 2013); *Skeens v. Astrue*, 903 F. Supp. 2d 1200, 1208-10 (W.D. Wash. 2012); *Pouria v. Astrue*, 2012 U.S. Dist. LEXIS 76692, 2012 WL 1977278, at *1-3 (C.D. Cal. Jun. 1, 2012); *Whitlock v. Astrue*, 2011 U.S. Dist. LEXIS 94955, 2011 WL 3793347, at *4-5 (D. Or. Aug. 24, 2011); *Grigsby v. Astrue*, 2010 U.S. Dist. LEXIS 5465, 2010 WL 309013, at *2 (C.D. Cal. Jan. 22, 2010); see also *Boltinhouse v. Astrue*, 2011 U.S. Dist. LEXIS 108488, 2011 WL 4387142, at *2 (C.D. Cal. Sept. 21, 2011) ("The weight of authority favors Plaintiff's position that a limitation on one- and two-part instructions is commensurate with Reasoning Level 1.").

*Trujillo v. Colvin,* 2014 U.S. Dist. LEXIS 72292, at *13-14 (D. Or. May 27, 2014).

In *Allen-Howard v. Comm'r of Soc. Sec.*, 615 Fed. Appx. 402 (9th Cir. 2015), Court of Appeals for the Ninth Circuit affirmed the Commissioner's decision in a case where the claimant was limited to "simple 1 to 2 step tasks" but the VE proposed jobs with level two reasoning.  *Id.* at 403.  In *Allen-Howard*, the ALJ did not resolve any conflict between the VE testimony and the DOT, and the Plaintiff alleged error.  The Ninth Circuit noted that after the ALJ's decision in *Allen-Howard*, it found, in *Rounds v.*

*Comm'r of Soc. Sec.*, 807 F.3d 996, 1003-1004 (9th Cir. 2015), that level-two reasoning required more than "simple 1 to 2 step tasks."  But because the law was unsettled in the Ninth Circuit at the time of Allen-Howard's hearing, there was "reasonable basis in law and fact to support the ALJ's decision not to recognize an apparent conflict between" the VE testimony and the DOT.  *Allen-Howard*, 615 Fed. Appx. at 403.

Borrowing from *Allen-Howard*, this Court concludes that in the absence of law in this circuit, the ALJ fulfilled his duty in this case regarding any conflict between the VE's testimony and the DOT, and substantial evidence supported his decision.

## IV. **Conclusion:**

There is substantial evidence to support the Commissioner's decision to deny benefits.  Ms. Thomas did not meet listing 12.05C; the weight given to Dr. Hollis's opinions was appropriate; and the ALJ fulfilled his duty with respect to any potential conflict between the VE's testimony and the DOT.  The Commissioner's decision that Ms. Thomas was not disabled within the meaning of the Social Security Act, therefore, must be, and hereby is, affirmed.  The case is dismissed, with prejudice.

IT IS SO ORDERED this 12th day of December, 2016.

_____
UNITED STATES MAGISTRATE JUDGE